<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JAMES RICHARDSON,<br><br>               Plaintiff,<br><br>   v.<br><br>EZRICARE, LLC, et al.,<br><br>               Defendants. | Civil Action No. 23-03498 (GC) (RLS)<br><br>**MEMORANDUM OPINION** |

<u>**CASTNER, District Judge**</u>

      This matter comes before the Court upon Defendants EzriCare, LLC's, and EzriRx, LLC's, Motions to Dismiss Plaintiff James Richardson's Complaint.[1]  (ECF Nos. 19 & 20.)  Plaintiff opposed (ECF Nos. 22 & 23), and Moving Defendants replied (ECF Nos. 25 & 26).  The Court has carefully considered the parties' submissions and decides the motion without oral argument pursuant to Federal Rule of Civil Procedure (Rule) 78(b) and Local Civil Rule 78.1(b).  For the reasons set forth below, and other good cause shown, EzriRx's motion is **DENIED**, and EzriCare's motion is **GRANTED** in part and **DENIED** in part.

---

[1]  Amazon.com, Inc., also moved to dismiss Plaintiff's Complaint.  (ECF No. 18.)  Upon receipt of a joint request from Plaintiff and Amazon.com, Inc., the Court granted the parties' request to abate the Motion to Dismiss pending settlement.  (ECF No. 32.)  Therefore, this Court will not address Amazon.com, Inc.'s, Motion.

I.    **BACKGROUND**

Richardson, an Alabama citizen, claims that his eye became infected with Pseudomonas Aeruginosa bacteria after using EzriCare artificial tears that he purchased from EzriCare on Amazon.com and used in Alabama.  (ECF No. 1 ¶¶ 2-3, 6-15. [2])

Richardson sues EzriCare, the New Jersey-based company that sold him the product (*id.* at ¶¶ 1, 16); EzriRx, another New Jersey-based company, which allegedly participated in the supply chain (*id.* ¶ 17); Global Pharma Healthcare Private Ltd., the India-based corporation that designed, manufactured, and packaged the product (*id.* ¶ 18); Aru Pharma, Inc., the New York-based corporation that allegedly designed, tested, manufactured, imported, and distributed the product (*id.* ¶ 19); and Amazon, the online platform where Richardson purchased the product.[3]

In a 14-count Complaint, Richardson asserts claims for strict liability for failure to warn against all Defendants (Count One); strict liability for design or manufacturing defect against all Defendants (Count Two); negligence or gross negligence against all Defendants (Count Three); products liability negligence for failure to warn against all Defendants (Count Four); products liability negligence for design or manufacturing defect against all Defendants (Count Five); negligent misrepresentation or omission against all Defendants (Count Six); fraud against all Defendants (Count Seven); fraudulent concealment against all Defendants (Count Eight); breach of express warranty against all Defendants (Count Nine); breach of implied warranty (Count Ten); negligent failure to timely recall against all Defendants (Count Eleven); violations of New Jersey's Consumer Fraud Act (NJCFA), N.J. Stat. Ann. § 56:8-2, against all Defendants (Count Twelve);

---

[2]    Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

[3]    The Court has diversity-based subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1).

violations of the New Jersey Products Liability Act (NJPLA), N.J. Stat. Ann. § 2A:58C-1, against all Defendants (Count Thirteen); and punitive damages against all Defendants (Count Fourteen). (*id.* at 18-45.)

EzriCare and EzriRx each moved to dismiss. EzriRx argues that Richardson lacks sufficient standing against EzriRx and, even so, he fails to state a claim against EzriRx. (ECF No. 20 at 9-13; ECF No. 26 at 1-5.) EzriCare argues that: (1) Richardson's complaint is insufficient on its face, (2) Richardson's product liability claims are subsumed by the New Jersey Products Liability Act (NJPLA), (3) Richardson fails to sufficiently plead a claim for breach of express warranty, and (4) Richardson fails to sufficiently plead a claim under the NJPLA. (ECF No. 19 at 12-26; ECF No. 25 at 1-10.)[4]

## II.    LEGAL STANDARDS

### A.    Rule 12(b)(1)—Lack of Subject-Matter Jurisdiction

Under Rule 12(b)(1), a court must grant a motion to dismiss if it lacks subject matter jurisdiction to hear a claim. *See* Fed. R. Civ. P. 12(b)(1). A motion to dismiss for want of standing is properly brought under Rule 12(b)(1), because "standing is a jurisdictional matter." *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007). On a motion to dismiss for lack of standing, plaintiff "bears the burden of establishing the elements of standing, and each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Id.* (citations and internal quotation marks omitted); *see also Transunion LLC v. Ramirez*, 141 S. Ct. 2190, 2207-08 (2021) (confirming that "plaintiffs must demonstrate standing for each claim

---

[4]     EzriRx joins in EzriCare's motion to dismiss. (ECF No. 20 at 6 n.1.)

that they press and for each form of relief they seek . . . with the manner and degree of evidence required at the successive stages of the litigation").

In evaluating a Rule 12(b)(1) motion to dismiss, courts must first determine whether the motion "presents a 'facial' attack or a 'factual' attack on the claim at issue, because that distinction determines how the pleading must be reviewed." *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014) (quoting *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012)). "A facial 12(b)(1) challenge, which attacks the complaint on its face without contesting its alleged facts, is like a 12(b)(6) motion in requiring the court to 'consider the allegations of the complaint as true.'" *Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 268 (3d Cir. 2016) (citation omitted).

A factual challenge, on the other hand, "attacks allegations underlying the assertion of jurisdiction in the complaint, and it allows the defendant to present competing facts." *Id.*; *see Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (noting that a motion "supported by a sworn statement of facts . . . must be construed as a factual, rather than a facial attack" (quoting *Int'l Ass'n of Machinists & Aerospace Workers v. Nw. Airlines, Inc.*, 673 F.2d 700, 711 (3d Cir. 1982))). The party invoking the federal court's jurisdiction has "the burden of proof that jurisdiction does in fact exist." *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). The "trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case" and "the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Id.* (quoting *Mortensen*, 549 F.2d at 891). "Therefore, a 12(b)(1) factual challenge strips the plaintiff of the protections and factual deference provided under 12(b)(6) review." *Hartig Drug Co.*, 836 F.3d at 268.

Regardless of the type of challenge, the plaintiff bears the "burden of proving that the court has subject matter jurisdiction." *Cottrell v. Heritages Dairy Stores, Inc.*, Civ. No. 09-1743, 2010 WL 3908567, at *2 (D.N.J. Sep. 30, 2010) (citing *Mortensen*, 549 F.2d at 891).

**B.    Rule 12(b)(6)—Failure to State a Claim**

On a motion to dismiss for failure to state a claim, courts "accept the factual allegations in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and assess whether the complaint and the exhibits attached to it 'contain enough facts to state a claim to relief that is plausible on its face.'" *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023) (quoting *Watters v. Bd. of Sch. Directors of City of Scranton*, 975 F.3d 406, 412 (3d Cir. 2020)).  "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Clark v. Coupe*, 55 F.4th 167, 178 (3d Cir. 2022) (quoting *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019)).  When assessing the factual allegations in a complaint, courts "disregard legal conclusions and recitals of the elements of a cause of action that are supported only by mere conclusory statements." *Wilson*, 57 F.4th at 140 (citing *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 903 (3d Cir. 2021)).  The defendant bringing a Rule 12(b)(6) motion bears the burden of "showing that a complaint fails to state a claim." *In re Plavix Mktg., Sales Pracs. & Prod. Liab. Litig. (No. II)*, 974 F.3d 228, 231 (3d Cir. 2020) (citing *Davis*, 824 F.3d at 349).

**III.    DISCUSSION**

**A.    EzriRx's Motion**

EzriRx argues that the Complaint does not allege facts establishing standing against it. (ECF No. 20 at 6, 9-10.)  Article III standing requires "(1) an injury-in-fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury

will be redressed by a favorable decision." *Finkelman v. Nat'l Football League*, 810 F.3d 187, 193 (3d Cir. 2016). EzriRx challenges only the causal-connection element.

EzriRx argues that Richardson has not and cannot plead a causal connection between his injury and EzriRx, because EzriRx operates a business-to-business sales portal—it does not sell products to consumers. (ECF No. 20 at 10.) In support, EzriRx submits the affidavit of Ezriel Green, the founder and chief executive officer of EzriRx. (ECF No. 20-1 at 1-3.)[5] Green states that "EzriRx is an online marketplace platform that assists pharmacies in purchasing prescription medications, over-the-counter drugs, and pet medication," and that "EzriRx does not sell directly to consumers." (*Id.* at 2.)

Richardson asserts that EzriRx and Green did not argue that it "had no involvement in the marketing, sale, and distribution of EzriCare Artificial Tears." (ECF No. 23 at 10.) He also argues that "Ezricare" is a trademark registered and licensed to EzriRx. (*Id.*) Richardson further asserts that "even if this Court determines that EzriRx should not be held directly liable for its actions and/or inactions with respect to EzriCare, EzriRx can be held derivatively liable for the actions and products of EzriCare" under an alter ego theory and agency principles. (*Id.* at 10-13.)

The Court disagrees with Richardson's alter-ego theory of liability. Entities sharing leadership, contact information, and counsel, (*see id.* at 11-12), does not alone justify disregarding their corporate separateness. *See Mikhail v. Amarin Corp., plc*, Civ. No. 23-01856, 2024 WL

---

[5]     On a factual attack on subject-matter jurisdiction, such as EzriRx's, "the court may consider evidence 'outside the pleadings,' including 'affidavits, depositions, and testimony to resolve factual issues bearing on jurisdiction.'" *Fort v. United States*, 712 F. Supp. 3d 575, 587 (D.N.J. 2024) (quoting *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014); and then *Gotha v. United States*, 115 F.3d 176, 179 (3d Cir. 1997)).

863427, at *6-8 (D.N.J. Feb. 29, 2024) (discussing the standard for disregarding corporate separateness). The Court cannot disregard EzriRx's and EzriCare's separateness on these grounds.

On the other hand, the Court finds that the Complaint includes enough allegations from which the Court could infer a plausible causal connection between Richardson's injury and EzriRx's conduct.[6] As to EzriRx's involvement, the Complaint alleges that EzriRx "markets, advertises, labels, distributes, packages, imports, supplies, and sells" EzriCare's artificial tears; and "'EzriCare' is a trademark registered and licensed to" EzriRx. (ECF No. 1 ¶¶16-17.) Those allegations explain EzriRx's connection with EzriCare and the product. They imply the way in which EzriRx may be involved in the design, labeling, advertising, or distribution of a product that made its way to Richardson. The Court too observes that Green's affidavit does not address this issue. (See ECF No. 20-1 at 2-3.) So although Richardson, faced with a factual challenge on subject-matter jurisdiction, does not enjoy Rule 12(b)(6) deference, the Court finds that his pleadings clear the standing hurdle. In the same light, EzriRx's Rule 12(b)(6) challenge asserting that the Complaint does not provide "fair notice of the claim and the grounds upon which it rests" is also rejected. (ECF No. 20 at 8, 11.)

EzriRx's motion to dismiss is therefore denied.

## B.    EzriCare's Motion

### 1.    Group Pleading

EzriCare argues that Plaintiff's Complaint is insufficient on its face because it contains impermissible group pleading. (ECF No. 19 at 13.) Specifically, EzriCare argues that the

---

[6]    Having found that the Complaint includes enough allegations from which the Court could infer a plausible causal connection between Richardson's injury and EzriRx's conduct, the Court need not address Richardson's agency theory of liability.

Complaint "fail[s] to give EzriCare notice as to what, if any, claims they make against it because Plaintiff's Complaint impermissibly lumps all the defendants together." (*Id.*)

A group pleading "is a complaint that 'fails to specify which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.'" *Foulke v. Twp. of Chery Hill*, Civ. No. 23-02543, 2024 WL 3568841, at *7 (D.N.J. July 29, 2024) (quoting *Morales v. New Jersey*, Civ. No. 21-11548, 2023 WL 5003891, at *4 (D.N.J. Aug. 3, 2023)). Group pleadings are those in which "it is 'virtually impossible to know which allegations of fact are intended to support which claim(s) for relief.'" *Innovative Cosm. Concepts, LLC v. Brown Packaging, Inc.*, Civ. No. 18-5939, 2020 WL 7048577, at *2 (D.N.J. Apr. 28, 2020) (citation omitted).

Courts in the Third Circuit often cite to the Eleventh Circuit when addressing group pleading issues. *See Foulke*, 2024 WL 3568841, at *7 (noting that "it is the Eleventh Circuit that has the robust doctrine prohibiting [group] pleadings"); *Bartol v. Barrowclough*, 251 F. Supp. 3d 855, 859 n.3 (D.N.J. 2017) ("The United States Court of Appeals for the Eleventh Circuit has articulated the bulk of existing law in [the] area" of group pleadings.). As the Eleventh Circuit recently explained, there are four broad categories of group pleading that merit dismissal: (1) "a complaint containing multiple counts where each count adopts the allegations of all preceding counts;" (2) a complaint that is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action;" (3) a complaint that does not separate "into a different count each cause of action or claim for relief;" or (4) a complaint that "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which

acts or omissions, or which of the defendants the claim is brought against." *See Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321-23 (11th Cir. 2015).

The Court is satisfied that Richardson's Complaint is not an impermissible group pleading because each count in the Complaint outlines specific allegations of fact intended to support his claims for relief. *See Innovative Cosm. Concepts,* LLC, 2020 WL 7048577, at *2. Further, while the Court recognizes that the Complaint contains "multiple counts where each count adopts the allegations of all preceding counts" and "assert[s] multiple claims against multiple defendants," *Weiland*, 792 F. 3d at 1321-23, the Complaint sets forth factual allegations against EzriCare separate from factual allegations against other defendants throughout the Complaint, such as distinctions in the supply chain of EzriCare artificial tears. (*See, e.g.*, ECF No. 1 ¶¶ 16-17, 49, 54, 65-66); *see also S.S. Hillsborough Twp. Bd. of Ed.*, Civ. No. 20-13077, 2022 WL 807371, at *5 (D.N.J. Mar. 17, 2022) (noting that "courts must consider the complaint in its entirety" (quoting *Kedra v. Schroeter*, 876 F. 3d 424, 441 (3d Cir. 2017))). Therefore, the Complaint, while not perfect, does not constitute a group pleading and provides EzriCare fair notice of the claims against it. *See also Mosley v. EzriCare LLC*, 2024 WL 1342615, at *12-13 (E.D. Ky. Mar. 29, 2024) ("The overlapping allegations against the defendants do not transform the Amended Complaint into a [group] pleading; the allegations are similar because the premise of the Amended Complaint is that EzriCare and its co-defendants engaged in similar conduct. At this point, before discovery and before more is known about each defendant's role in getting the relevant products to the market, the Amended Complaint is sufficient."); *Diamond Resorts U.S. Collection Dev., LLC v. Sumday Vacations, LLC*, 2020 WL 3250130, at *2 (M.D. Fla. Feb. 21, 2020) (finding that a

complaint alleging the defendants engaged in the same or similar conduct was not an improper group pleading that warranted dismissal).

        2.    NJPLA Subsumption

EzriCare argues that the NJPLA subsumes Richardson's common-law products-liability claims. (ECF No. 19 at 15.) Richardson counters that "until this Court conducts a choice-of-law analysis and determines with finality the law applicable to Mr. Richardson's claims, Plaintiff is entitled to plead claims that may proceed under common law, Alabama law, and/or New Jersey law." (ECF No. 22 at 18.)

Although "it can be inappropriate or impossible for a court to conduct [a choice of law] analysis at the motion to dismiss stage when little or no discovery has taken place[,] . . . [s]ome choice of law issues may not require a full factual record and may be amenable to resolution on a motion to dismiss." *Rapid Models & Prototypes, Inc. v. Innovated Sols.*, 71 F. Supp. 3d 492, 499 (D.N.J. 2014) (quoting *Snyder v. Farnam Companies, Inc.*, 792 F. Supp. 2d 712, 718 (D.N.J. 2011)) (most alterations in *Rapid Models*).

On the present record, the Court finds that it would be inappropriate to conduct a choice-of-law analysis at this stage. EzriCare notes that "product liability claims in Alabama are brought pursuant to the Alabama Extended Manufacturer's Liability Doctrine (AEMLD) or common law negligence." (ECF No. 19 at 17 n.13.) To the extent a conflict exists (or does not exist) between the law of New Jersey and Alabama, the parties' motion papers do not conduct a choice-of-law analysis for the Court's review. Nor do they provide the information necessary for the Court to perform its own analysis. So, the Court will refrain from doing so.[7] The Court therefore rejects

---

[7]     EzriCare raises the choice of law issue in a footnote. Courts generally need not address arguments raised in footnotes. *See Kislak Co. Inc. v. Prominent Properties LLC*, Civ. No. 22-2482, 2023 WL 5218085, at *3 n.1 (D.N.J. Aug. 15, 2023) ("[A]rguments raised in passing (such

EzriCare's NJPLA subsumption argument without prejudice to EzriCare renewing the argument later.

### 3.    Express Warranty Claim

Count Nine asserts a claim for breach of express warranty.  To state a claim for breach of express warranty under New Jersey law,[8] a plaintiff must allege that (1) "Defendant made an affirmation, promise or description about the product;" (2) "this affirmation, promise or description became part of the basis of the bargain for the product;" and (3) "the product ultimately did not conform to the affirmation, promise or description."  *Hindermyer v. B. Braun Med Inc.*, 419 F. Supp. 3d 809, 829-30 (D.N.J. 2019) (quoting *Snyder*, 792 F. Supp. 2d at 721).  The New Jersey Uniform Commercial Code (U.C.C.) defines an "express warranty" as follows:

> (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
>
> (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
>
> [N.J. Stat. Ann. § 12A:2-313(1).]

Richardson argues that EzriCare "ignore[d] Plaintiff's thorough factual allegations, . . . including the recitation of facts that led to the FDA recall of EzriCare Artificial Tears."  (ECF No. 22 at 19) (citing ECF No. 1 ¶¶ 48-69.)  The Complaint includes a copy of Richardson's order confirmation (ECF No. 1 ¶ 8) and the product's label (*id.* ¶ 54).  In the proof of purchase, EzriCare

---

as, in a footnote), but not squarely argued, are considered waived." (quoting *John Wyeth & Brother Ltd. v. Cigna Int'l Corp.*, 119 F.3d 1070, 1076, n.6 (3d Cir. 1997))).

[8]    When sitting in diversity, the Court applies the law of the forum state.  *See Gebhardt v. Beri*, Civ. No. 23-3008, 2024 WL 3279531, at *2 n.2 (D.N.J. June 14, 2024) (citing *Erie Railroad v. Tompkins*, 304 U.S. 64, 78 (1938)).

stated that the artificial tears were "Extra Strong Moisturizing Lubricating Eye Drops … for Fast Acting Dry Eye Relief."  (*Id.* ¶ 8.)  On the EzriCare label, it described the product as "Lubricant Eye Drops" that "Refresh, Lubricate and Moisturizes."  (*Id.* ¶ 54.)  Further, the label lists "Uses" and states the following: "for use as a protectant against further irritation or to relieve dryness of the eye" and "for the temporary relief of discomfort due to minor irritations of the eye, or to exposure to wind or sun."  (*Id.*)

The Complaint asserts that "[s]uch statements constitute an affirmation of fact or promise or a description of the product as being safe and not posing a dangerous health risk."  (*Id.* ¶ 180.) Additionally, the Complaint argues that "Defendants breached this express warranty because the EzriCare Artificial Tears are not safe."  To the contrary, Richardson argues that "these artificial tears pose a serious and dangerous health risk because they are contaminated with the Pseudomonas Aeruginosa bacteria—a dangerous and deadly bacterium."  (*Id.* ¶ 181.)  Finally, Richardson alleges that he "read and relied on these express warranties provided by Defendants in the labeling, packaging, and advertisements."  (*Id.* ¶ 182.)

The statements Richardson relies on are insufficient to state a claim for breach of express warranty.  Courts in this Circuit have refused to find that user instructions, or even labels representing that a product is "safe and effective," are express warranties.  *See In re Avandia Mktg. Sales Pracs. & Prod. Liab. Litig.*, 588 F. App'x 171, 176-78 (3d Cir. 2014) (noting approvingly that an Ohio court "refused to find the words 'safe and effective' to create an express warranty in the absence of representations that a drug was free from all harmful side effects or was absolutely harmless"); *Volin v. Gen. Elec. Co.*, 189 F. Supp. 3d 411, 421 (D.N.J. 2016) (rejecting that instructions in an owner's manual constituted an express warranty that the product would be "free from defects in material and workmanship and fit for the ordinary purpose" of the product).  Also

relevant is that the EzriCare product label qualifies itself, warning users to "[s]top use and ask a doctor if you experience" "eye pain," "changes in vision," or "continued redness or irritation of the eye or if the condition worsens or persists for more than 72 hours." (ECF No. 1 ¶ 54.) *See In re Avandia*, 588 F. App'x at 178 ("Because GSK disclosed Avandia's contraindications, risk factors, and potential side effects and [the plaintiff] does not allege GSK made unqualified guarantees of safety or effectiveness, [the plaintiff] has failed as a matter of New Jersey law to state an express warranty claim.").

Thus, the Court finds that Richardson does not state a claim for breach of express warranty under New Jersey law.

### 4.    NJPLA Claim

Count Thirteen asserts NJPLA violations for the defective design and manufacturing of EzriCare artificial tears. (ECF No. 1 ¶¶ 233-45.)

To prove a defect, a plaintiff must show that "(1) the product was defective; (2) the defect existed when the product left the hands of the defendant; (3) the defect proximately caused injuries to the plaintiff; and (4) the injured plaintiff was a reasonably foreseeable user." *Hindermyer*, 419 F. Supp. 3d at 823 (citing *Myrlak v. Port Auth. of New York & New Jersey*, 723 A.2d 45, 52 (N.J. 1999)).

### a.    Design Defect

To establish a prima facie case of design defect, the plaintiff must prove the availability of a "technologically feasible and practical alternative design that would have reduced or prevented the plaintiff's harm without substantially impairing the reasonably anticipated or intended function of the product." *Hindermyer*, 419 F. Supp. 3d at 823-24 (citation omitted). No per se rule requires a plaintiff to, "under all circumstances, provide a reasonable alternative design" at the pleading

stage. *Id.* at 824. But to state a claim for design defect under the NJPLA, the plaintiff must "plead either that the product's risk [of harm] outweighs its [utility], or that an alternate design exists." *Id.* (quoting *Mendez v. Shah*, 28 F. Supp. 3d 282, 298 (D.N.J. 2014) (alterations in *Hindermyer*).

EzriCare argues that Richardson "fails to plead any of the requisite elements for design defect." (ECF No. 19 at 21.) The Court disagrees. Richardson attributes the contamination to the "lack of appropriate microbial testing, formulation issues[,] . . . and lack of proper controls concerning tamper-evident packaging." (ECF No. 1 ¶¶ 3, 247.) For alternative design, Richardson asserts that safer alternatives, including artificial tears products that contain preservatives to prevent the growth of bacteria, have been readily available for decades." (*Id.* ¶ 97.) He also asserts that the "multi-use bottle design also made the Product more susceptible to the contamination and growth of Pseudomonas Aeruginosa bacteria." (*Id.* ¶ 137.) Richardson also asserts that "new therapies . . . known as 'phage' therapies" can be used to "treat antibiotic-resistant bacteria, like the *Pseudomonas Aeruginosa*[,] . . . by deploying viruses that aim to attack bacteria, fending off infections that traditional antibiotic drugs fail to stamp out." (*Id.* ¶ 58.)

And as to the risk-utility element, Richardson alleges that "EzriCare Artificial Tears is an inessential over-the-counter product that does not treat or cure any serious disease." (*Id.* ¶ 97.) Thinner allegations than these have survived motions to dismiss. *See, e.g.*, *Barrett*, 518 F. Supp. 3d at 826 (denying a motion to dismiss a defective-design claim alleging that a pharmaceutical "was developed, mixed and/or created in an insanitary and unsafe environment that contained or promoted the development of harmful organisms such as bacteria, which was . . . unreasonably dangerous").

Thus, Richardson's claim for design defect under the NJPLA may proceed.

b.    Manufacturing Defect

A manufacturing defect exists if a product "deviated from the design specification, formulae, or performance standards of the manufacturer or from otherwise identical units manufactured to the same manufacturing specifications or formulae." N.J. Stat. Ann. § 2A:58C-2(a). "To determine whether a product contains a manufacturing defect, the 'product may be measured against the same product as manufactured according to the manufacturer's standards.'" *Hindermyer*, 419 F. Supp. 3d at 824 (quoting *Mendez*, 28 F. Supp. 3d at 298). "If the particular product used by the plaintiff fails to conform to those standards or other units of the same kind, it is a manufacturing defect." *Id.* (quoting *Mendez*, 28 F. Supp. 3d at 298).

New Jersey products-liability law does not require the injured plaintiff "to prove a specific manufacturer's defect." *Id.* (quoting *Mendez*, 28 F. Supp. 3d at 297). "[B]ecause the evidence of a flaw in the manufacturing process is uniquely within the knowledge and control of the manufacturer, '[p]roof that a product is not fit for its intended purposes requires only proof . . . that something was wrong with the product.'" *Id.* (quoting *Myrlak*, 723 A.2d at 52) (some quotation marks omitted); *see Cole v. NIBCO, Inc.*, Civ. No. 13-7871, 2016 WL 10536025, at *16 (D.N.J. Feb. 26, 2016) ("[A] plaintiff may demonstrate that a manufacturing defect exists with evidence that in a general sense and as understood by a layman . . . 'something was wrong' with the product." (quoting *Scanlon v. Gen. Motors Corp., Chevrolet Motor Div.*, 326 A.2d 673, 677 (N.J. 1974)). That said, the "mere occurrence of an accident and the mere fact that someone was injured are not sufficient to demonstrate the existence of a defect." *Hindermyer*, 419 F. Supp. 3d at 824 (quoting *Myrlak*, 723 A.2d at 52).

Based on these pleading standards, all favorable inferences, and a liberal reading of his pleadings, Richardson's manufacturing-defect allegations are enough to survive a motion to

dismiss.  He alleges that the manufacturer failed to perform "appropriate microbial testing" and lacked "proper controls concerning tamper-evidence packaging."  (ECF No. 1 ¶¶ 3, 68.)  He also alleges that the EzriCare product "deviated from the design specifications, formulae, or performance standards of the manufacturer," such that the product had been contaminated by the time he used it.  (*Id.* ¶¶ 9-15, 64, 96, 241.)  As a result, the allegations create a plausible inference that the product "fail[ed] to conform to standards or other units of the same kind."  *Cf. Hindermyer*, 419 F. Supp. 3d at 824.

Thus, Richardson's manufacturing-defect claim under the NJPLA may proceed.

### 5.    NJPLA's Immunity Provision

Although product sellers are subject to liability under the NJPLA, the Act includes an immunity provision "to rescue persons it categorized as 'product sellers' from strict liability in certain circumstances."  *Allstate New Jersey Ins. Co. v. Amazon.com, Inc.*, Civ. No. 17-2738, 2018 WL 3546197, at *6 (D.N.J. July 24, 2018) (quoting *Thomas v. Ford Motor Co.*, 70 F. Supp. 2d 521, 530 (D.N.J. 1999)).  Thus, "by filing an affidavit correctly identifying the manufacturer of the product," a defendant seller can escape liability under the Act.  *Id.*; N.J. Stat. Ann. § 2A:58C-9(b).  Even when a product seller submits the affidavit certifying the correct identity of the manufacturer, a product seller may still be liable if the seller "exercised some significant control over the design, manufacture, packaging or labeling of the product relative to the alleged defect in the product which caused the injury, death or damage [; or]...if [t]he manufacturer has no known agents, facility, or other presence within the United States[;] or [t]he manufacturer has no attachable assets or has been adjudicated bankrupt and a judgment is not otherwise recoverable from the assets of the bankruptcy estate."  *Claypotch v. Heller, Inc.*, 823 A.2d 844, 852 (N.J. Super. Ct. App. Div. 2003) (quoting N.J. Stat. Ann. § 2A:58C-9(c)(2), (3), (d)(1)).  A product seller also

may be subject to liability "if it 'knew or should have known of the defect in the product which caused the injury, death or damage or the plaintiff can affirmatively demonstrate that the product seller was in possession of facts from which a reasonable person would conclude that the product seller had or should have had knowledge of the alleged defect in the product which caused the injury, death or damage; or . . . created the defect in the product which caused the injury, death or damage.'" *Id.* (citing § 2A:58C-9(d)(2), (3)).  Therefore, "a product seller is relieved from liability only if it is 'truly innocent of responsibility for the alleged product *and* the injured party must retain a viable claim against the manufacturer.'" *Bashir v. Home Depot*, Civ. No. 08-04745, 2011 WL 3625707, at *3 (D.N.J. Aug. 16, 2011) (quoting *Claypotch*, 823 A.2d at 852) (emphasis added).

EzriCare claims to fall within the NJPLA provision of immunity because it submits an affidavit of Ezriel Green, who is also EzriCare's cofounder, stating that "EzriCare's Artificial Tears were manufactured and packaged by Global Pharma Healthcare Private Limited, whose manufacturing facility is located in Tamil Nadu, India." (ECF No. 19-1 at 2.)  Richardson counters and asserts that the Complaint has alleged "EzriCare knew or should have known that the EzriCare Artificial Tears were defectively designed such that they were contaminated with a deadly bacterium."  (ECF No. 22 at 26 (citing ECF No. 1 ¶ 108).)  Further, Richardson argues that "[b]ecause Global Pharma does not have any presence in the United States, no attachable assets, and cannot be located, EzriCare is not entitled to immunity under the NJPLA."  (*Id.* at 27.)

The Court finds that the "present record does not establish that EzriCare is 'truly innocent of responsibility for the alleged product' as a matter of law," and therefore the parties should engage in discovery to clarify EzriCare's role in bringing this product to the market.  *See Dickstein v. EzriCare, LLC*, Civ. No. 23-01649, 2024 WL 2803026, at * 10 (D.N.J. May 31, 2024).

Thus, the Court rejects EzriCare's claim of immunity at this time.

IV.   **CONCLUSION**

For the reasons set forth above, and other good cause shown, EzriRx's motion is **DENIED**, and EzriCare's motion is **GRANTED** in part and **DENIED** in part. Richardson's claim for breach of express warranty is **DISMISSED** without prejudice. An appropriate Order follows.

Dated: September ____30____, 2024

GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE